UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO: 1:09-CR-103-TLS |
| | ) | |
| STANLEY BENNETT | ) | |

**OPINION AND ORDER**

**A.     Introduction and Background**

The Speedy Trial Act (the "Act"), 18 U.S.C. § 3161, *et seq.*, principally requires a federal criminal trial to commence within 70 days of the filing of the information or indictment or from the defendant's initial appearance, whichever occurs last. 18 U.S.C. § 3161(c)(1). To accommodate the expected differences in criminal cases and the varying valid reasons for longer pretrial periods, the Act excludes delays attributable to certain events and circumstances. *See, e.g.*, 18 U.S.C. § 3161(h)(1)(A)–(H). Defendant Stanley Bennett's trial was scheduled to begin on February 9, 2010. However, on January 29, the Defendant requested a continuance of at least 60 days to allow the Defendant to be evaluated and assessed by a psychologist on the basis of information the Defendant's family had recently provided to his counsel. The Court granted the Defendant's motion, and further delay ensued. That delay, however, is excluded in computing the time within which the Defendant's trial must begin under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)(A) (excluding delay resulting from any examination to determine the mental competency of the defendant).

On March 8, 2010, the Supreme Court issued its opinion in *Bloate v. United States*, 2010 WL 757660 (Mar. 8, 2010), which abrogated Seventh Circuit law regarding the automatic exclusion of time that district courts typically granted to parties to prepare and file pretrial

motions. After reviewing the docket in this case in light of *Bloate*, the Court determined that more than 70 non-excludable days may have passed since the Defendant was arraigned. The Court held a conference with parties' counsel and directed them to provide briefing with respect to speedy trial issues raised by the *Bloate* decision.

On March 22, the Defendant filed a Motion to Exclude Time Granted From Defendant's Continuances From 70 Day "Speedy Trial" Period [DE 31]. The Defendant requests that the Court enter an order attributing the delays in this case to his counsel's need to investigate whether to seek the appointment of a forensic psychologist to evaluate the Defendant, and to allow time for the Defendant to be evaluated upon the appointment of such an expert. The Government filed a Response to Defendant's Statement on *Bloate* Issues [DE 33], asserting that there has been no Speedy Trial Act violation.

**B.    Calculation Under the Speed Trial Act**

On October 28, 2009, the Government filed an Indictment charging the Defendant with violating 18 U.S.C. § 922(g)(1). On November 2, the Defendant made an initial appearance and pleaded not guilty to the charge. The Magistrate Judge's arraignment order gave the parties 30 days (from November 2 to December 2) to file pretrial motions. The court set a final pretrial conference for February 1, 2010, and scheduled the trial to begin on February 9.[1]

On November 16, 2009, the Defendant filed a motion to appoint an investigator, which the Court granted on December 1. On January 29, 2010, the Defendant moved to continue the

---

[1] The trial was not scheduled to begin until more than 70 days after the arraignment because the district court, before *Bloate*, excluded from the 70-day calculation the time that it granted to the parties to prepare and file pretrial motions.

pretrial conference and trial on grounds that his counsel needed additional time to determine whether the Defendant should be evaluated by a psychologist based on information counsel had recently obtained from the Defendant's family. The Defendant argued that the ends of justice served by granting his continuance outweighed the public and the Defendant's interests in a speedy trial. On February 1, the Court granted the motion in part by continuing the pretrial conference and setting a hearing on the motion to continue trial. The Court confirmed the February 9 trial date. Later that same day, the Court conducted the hearing and vacated the trial date after counsel for the Defendant advised that he anticipated filing a motion for an independent psychological examination of the Defendant. In relation to the anticipated examination, the Defendant filed motions on February 8 and 17, which the Court granted on February 10 and 17, respectively.

In light of the foregoing, more than 70 days of non-excludable time have expired. Thirteen days passed from the arraignment on November 2 to November 16, the date the Defendant first filed any motion that required the Court's consideration. The Court ruled on this motion on December 1. Barring any additional time being excluded, the 70-day trial clock would expire 57 days later, on January 27, 2010. The Defendant's trial was not scheduled to begin until February 9. Because the February 9 trial date did not allow the Defendant enough time to investigate and prepare for trial, he filed a motion to continue. However, the motion to continue was not filed until January 29, which was 58 days after the nonexludable time began to run on December 2. Therefore, 71 days had already elapsed when the Defendant filed his motion to continue.

## C. Significance of *Bloate*

In *Bloate*, the Supreme Court held that the time to prepare pretrial motions is not automatically excludable from the Act's 70-day limit, but is excludable only when a district court makes case-specific findings regarding the ends of justice that would be served by granting a continuance to prepare for and file pretrial motions. *See Bloate*, 2010 WL 757660, at *5; *id.* at *8 ("Our determination that the delay at issue here is not automatically excludable gives full effect to subsection (h)(7), and respects its provisions for excluding certain types of delay only where [the] district court makes findings justifying the exclusion." (footnote omitted)). The only delay caused by pretrial motions that is automatically excludable, i.e, without district court findings, is the delay from the time the motion is filed through the hearing or disposition point. 2010 WL 757660, at *6.

Prior to *Bloate*, district courts in the Seventh Circuit were informed to automatically exclude the time that they granted defendants to prepare and file pre-trial motions. *See United States v. Montoya*, 827 F.2d 143, 153 (7th Cir. 1987) ("[T]ime consumed in the preparation of a pretrial motion must be excluded—provided that the judge has expressly granted a party time for that purpose. Even when motions are not actually filed in the allotted time, the amount of time *granted* by the district judge for their preparation and submission is excludable." (internal quotation marks and citations omitted, emphasis in original)); *United States v. Tibboel*, 753 F.2d 608, 610 (7th Cir. 1985) (joining the First Circuit in holding "that time consumed in the preparation of a pretrial motion must be excluded—provided that the judge has expressly granted a party time for that purpose"); *see also United States v. Napadow*, 596 F.3d 398 (7th Cir. 2010) (citing *Montoya*).

4

The Supreme Court fully acknowledged in *Bloate* that the Act "accounts for the possibility that a district court would need to delay a trial to give the parties adequate preparation time. An exclusion under subsection (h)(7) is not automatic, however, and requires specific findings. Allowing district courts to exclude automatically such delays would redesign this statutory framework." *Bloate*, 2010 WL 757660, at *9. Under (h)(7), the court must make a record, orally or in writing, of "its reasons for finding that the ends of justice served by granting such a continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). "[I]f a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted." *Zedner*, 547 U.S. at 508. In *Zedner*, the Supreme Court noted the reason behind the strict procedural requirements that must accompany an ends-of-justice continuance:

> The exclusion of delay resulting from an ends-of-justice continuance is the most open-ended type of exclusion recognized under the Act and, in allowing district courts to grant such continuances, Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases. But it is equally clear that Congress, knowing that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured, saw a danger that such continuances could get out of hand and subvert the Act's detailed scheme. The strategy of § 3161(h)[(7)], then, is to counteract substantive openendedness with procedural strictness. This provision demands on-the-record findings and specifies in some detail certain factors that a judge must consider in making those findings.

547 U.S. at 508–09. To date, no such findings have been made in this case. Certainly, no such findings were made in relation to the time needed to prepare and file pre-trial motions.

The Seventh Circuit has stated that a court need not make an ends of justice finding contemporaneously with its continuance order, *United States v. Rollins*, 544 F.3d 820, 830 (7th Cir. 2008) (holding that it was appropriate for the district court to issue an order on September 6

making findings with respect to a continuance granted on October 25), although "the better practice is for the court to make the required findings at least prior to a defendant's motion to dismiss the indictment for a violation of the Act," *id.*; *United States v. Larson*, 417 F.3d 741, 746 (7th Cir. 2005). This is consistent with the Supreme Court's position:

> Although the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance (the continuance can only be "granted . . . on the basis of [the court's] findings"), the Act is ambiguous on precisely when those findings must be "se[t] forth, in the record of the case." However this ambiguity is resolved, at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2).

*Zedner*, 547 U.S. at 506–07 (ellipses and brackets in original) (also noting in a footnote that the "best practice" was for a court to put its findings on the record at or near the time when it grants the continuance).

The Government argues that the 30 days that the Court granted to counsel at his arraignment for the purpose of preparing and filing pretrial motions is properly excluded because "[t]he ends of justice are clearly served by allowing counsel for the defendant adequate time to determine what course of action would be in the best interest of defending his client." (Gov't Resp. 2–3.) The Government therefore requests that the Court enter an order finding that the ends of justice under subsection (h)(7) were served by excluding from the speedy trial calculation the 30 days that the court gave the parties to file pretrial motions. The Court does not agree that it can make such a finding at this stage in the proceedings. Although it would still be possible for the Court to find that any previous continuances were granted on grounds that they satisfied the end of justice, the only continuance the Court previously granted in this case was requested on January 29, 2009, which was two days after the 70-day period had expired. The

6

Defendant submits that he "would have sought [a] continuance of any trial setting within the 70 days under 18 U.S.C. [§] 3161(h)(1)(A) and (h)(7) in order to have an evaluation in light of the interaction and investigation which was ongoing." (Def.'s Mot. ¶ 10.) And certainly, given the state of the law in the Seventh Circuit, the Defendant had no reason to believe that a continuance was necessary, believing that he had 30 more days to prepare for trial than he actually did. Thus, the Court has no reason to doubt that the Defendant would have moved for a continuance—nor to doubt that any such motion would have been granted on grounds that the ends of justice served by granting the continuance outweighed the best interests of the public and the defendant in a speedy trial. Indeed, the Court now finds that the ends of justice served by granting the continuance on December 1 outweighed the best interest of the public and the defendant in a speedy trial because failure to grant such a continuance would have likely resulted in a miscarriage of justice by not allowing the Defendant's counsel sufficient time to determine whether the Defendant could adequately and effectively aid in his defense, and would deny the Defendant the reasonable time necessary for effective preparation of any motion related to his mental capacity, taking into account the exercise of due diligence.

That being said, the parties have not pointed to any mechanism whereby the Court can reach back into the record before the filing of the any motion to continue and make an ends-of-justice finding. According to the plain language of the Act, such a finding only applies to continuances. It might be argued that because the Court set the trial to begin beyond the 70-day period, and because the Act permits a judge to grant a continuance "on his own motion," § 3161(h)(7)(A), that it was in essence granting a "continuance" when it set the trial date outside the 70-day limit. However, at the time the Court set the trial date none of the factors that a court

7

must weigh in deciding the competing interests of a speedy trial were before it, and the Court did not purport to exclude any time on grounds that the ends of justice would be served. The Court simply selected a date on the basis of the (erroneous) assumption that it was within the Act's 70-day limit. Thus, there could have been none of the "findings" that must be made under subsection (h)(7)(A).

The Court must also keep in mind that "the Act was designed not just to benefit defendants but also to serve the public interest by, among other things, reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment." *Zedner*, 547 U.S. at 501. An ends-of-justice continuance is not to function as the defendant's mere waiver of the Act, but rather, the defendant must put forward sufficient reasons for the requested continuance that the court must consider and balance among the relevant factors. *Zedner*, 547 U.S. at 500. Because the Act "serves not only to protect defendants, but also to vindicate the public interest in the swift administration of justice," a "defendant may not opt out of the Act even if he believes it would be in his interest; '[a]llowing prospective waivers would seriously undermine the Act because there are many cases . . . in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest.'" *Bloate*, 2010 WL 757660, at *9 (quoting *Zedner*, 547 U.S. at 502).

The Court does not read the Defendant's Motion to Exclude Time or the Government's Response as suggesting that the Court simply waive the Act. They both insist that the ends of justice served by giving the Defendant ample time to investigate whether he should be evaluated by a psychologist outweighs the best interest of the public, thereby justifying exclusion of the

delay from the time in which the Defendant must be tried. Thus, the parties are not seeking the kind of prospective waiver that would "seriously undermine the Act." *Zedner*, 547 U.S. at 502. It may be that a retrospective waiver, which is anticipated by § 3162(a)(2), *id*, eventually comes to pass in this case. Section 3162(a)(2) provides, as a sanction for violation of the Act, that the indictment "shall be dismissed on motion of the defendant." However, "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal." 18 U.S.C. § 3162(a)(2). Thus, the sanction of dismissal is not self-executing. The Supreme Court has acknowledged that, in comparison to a prospective waiver, the

> sort of retrospective waiver allowed by § 3162(a)(2) does not pose a comparable danger because the prosecution and the court cannot know until the trial actually starts or the guilty plea is actually entered whether the defendant will forgo moving to dismiss. As a consequence, the prosecution and the court retain a strong incentive to make sure that the trial begins on time.

*Zedner*, 547 U.S. at 502. Here, there has been no motion to dismiss filed by the Defendant. The Government and the Court still have a strong incentive to make sure that the Defendant's trial begins before any further non-excludable time passes.

Because the Defendant may not prospectively waive his speedy trial rights, and the Court may not reach back into the record to exclude time that was not granted as a result of its consideration of factors that would support an ends-of-justice continuance, the Defendant's Motion to Exclude Time cannot be granted in its entirety. The Court finds that the continuance granted by this Court on December 1, 2009, resulted in an excludable delay because the ends of justice served by granting the continuance outweighed the Defendant's and the public's interest in a speedy trial. However, this does not alter the conclusion that more than 70 days of

9

nonexcludable time elapsed before the request for this continuance was pending before the Court.

**D.   Conclusion**

For the foregoing reasons, the Defendant's Motion to Exclude Time [DE 31] is GRANTED IN PART and DENIED IN PART.

SO ORDERED on March 31, 2010.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT