# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:09-CR-103-TLS |
| | ) | |
| STANLEY BENNETT | ) | |

## OPINION AND ORDER

Before the Court is a Motion to Suppress [ECF No. 86], filed on January 26, 2011. The Defendant, Stanley Bennett, asks the Court to exclude evidence that police seized from his residence at a certain address on Oliver Street on October 3, 2009. For the reasons stated in this Opinion and Order, the Defendant's Motion to Suppress is denied.

## BACKGROUND

On October 28, 2009, the Government filed an Indictment charging that the Defendant violated 18 U.S.C. § 922(g)(1) when, on or about October 2, 2009, he knowingly possessed a firearm having already been convicted of a felony. On January 26, 2011, the Defendant filed a Motion to Suppress evidence that was seized from his residence and requested an evidentiary hearing. In his Motion, the Defendant argued that the search police conducted after they obtained consent from Mary Bennett, the Defendant's mother and the owner of the residence, was illegal because Mary Bennett was under duress due to the chaotic circumstances when the police were in her home and because her age, intelligence, education, and physical and mental health condition all indicated that she was not capable of granting valid consent to search. The Government, in its Response to Defendant's Motion to Suppress, stated that it is not relying on any consent given by the Defendant's mother as justification for the search, but that the

warrantless search of the Defendant's house was justified by exigent circumstances. The Government also argued that the evidence adduced at an evidentiary hearing would establish that the discovery of the firearm was inevitable as the police would have secured a search warrant for the property.

On February 18, the Court conducted an evidentiary hearing. The Defendant was present in the courtroom with his attorney. The Court heard testimony from Fort Wayne Police Department (FWPD) Officers Phillip Ealing, John Drummer, and Dale Llewellyn and from Mary and Charlie Bennett.

On April 20, the Defendant filed a Brief in Support of his Motion to Suppress Evidence. The Defendant argued that the Government cannot establish by a preponderance of the evidence that the officers had an objectively reasonable basis to believe that exigent circumstances required immediate action that did not allow time for obtaining a search warrant. He also argued against the application of the inevitable discovery doctrine exception to the exclusionary rule. On May 20, the Government filed its Response to Defendant's Motion to Suppress, in which it relied on the inevitable discovery doctrine to justify the admission of the firearm.

## STATEMENT OF FACTS

Based upon the evidence presented at the hearing on the Motion to Suppress, the Court finds the following to be the relevant, credible facts:

At around 5:41 p.m. on October 2, 2009, Officer Ealing was patrolling in the southeast quadrant of Fort Wayne when he was dispatched to the area of Oliver and Pontiac streets because an anonymous 911 caller reported that a black male wearing a black jacket and blue

jeans was shooting a gun. Officer Ealing responded to a specific area of Oliver Street and observed Stanley Bennett, the Defendant, as a person matching the caller's description. Officer Ealing had been to the particular Oliver Street residence in the past and had prior contacts with the Defendant. Officer Ealing also saw Martha Harris, whom he recognized from previous interactions, standing on the porch next to the Defendant. Officer Ealing saw the Defendant holding a small, silver revolver in his right hand, which was extended upward at a forty-five degree angle. As Officer Ealing exited his patrol car, the Defendant fired the revolver into the air.

In response to the Defendant's actions, Officer Ealing drew his firearm and pointed it at the Defendant, yelling at him to drop the gun and get on the ground. Harris verbally noted the police presence, and the Defendant looked in Officer Ealing's direction, lowered the gun, and ran into the house with the revolver while Harris stayed outside on the porch. About thirty seconds later, the Defendant came back outside onto the porch with the gun no longer visible. Officer Ealing ordered the Defendant to keep his hands where he could see them and get down on the ground. The Defendant walked down the porch steps and sat down on the bottom step. Officer Ealing, now joined by Officer Drummer, continued commanding the Defendant to get down on the ground. The Defendant eventually complied, and Officer Drummer covered Ealing so he could handcuff the Defendant and place him under arrest. The officers conducted a pat down search, but it did not uncover the handgun or any other weapons. The officers noticed that the Defendant smelled strongly of alcohol, had blood shot and watery eyes, and slurred his speech.

The police had secured the Defendant and did not consider Harris to be a threat, but they

did not know if anyone was inside the house. Officer Ealing was aware that the Defendant's mother lived at that Oliver Street address. The officers entered the house to conduct a protective sweep to look for persons who might represent a threat or be injured. Officer Dale Llewellyn also participated in the protective sweep. The Defendant's mother, Mary Bennett, and his brother, Charlie Bennett, were inside the house. During the protective sweep, the officers did not see any weapons. Officer Drummer then sought Mary Bennett's consent to search the house. Upon conducting a second search, Officer Llewellyn recovered a revolver underneath a couch in the living room. He opened the cylinder and observed three live rounds and four spent rounds. Officer Llewellyn rendered the weapon safe and gave it to Officer Ealing, who identified the weapon as the one he had seen the Defendant fire. A check with the FWPD Bureau of Identification revealed that the Defendant did not have a valid handgun permit.

## DISCUSSION

### A. Inevitable Discovery

The Defendant argues that the search leading to the discovery of a gun underneath a couch in his living room violated the Fourth Amendment and that the Government should not be allowed to present the gun as evidence against him. The exclusionary rule is a judicially created remedy that prohibits the government from introducing at a defendant's trial evidence of guilt that was obtained through a violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 908 (1984); *United States v. Carter* 573 F.3d 418, 422 (7th Cir. 2009). "Exclusion is not a necessary consequence of a Fourth Amendment violation," *Guzman v. City of Chi.*, 656 F.3d 393, 398 (7th Cir. 2009), and the exclusionary rule "should not be used to make the person

whose rights have been violated better off than he would be if no violation had occurred," *United States v. Brown*, 328 F.3d 352, 357 (7th Cir. 2003) (citing *United States v. Salgado*, 807 F.2d 603, 607 (7th Cir. 1986)). Thus, under the inevitable discovery doctrine, "even an illegally seized item need not be suppressed if the government can prove by a preponderance of the evidence that the officers would have discovered it by lawful means." *United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010) (citing *Nix v. Williams*, 467 U.S. 431 (1984), and *United States v. Marrocco*, 578 F.3d 627 (7th Cir. 2009)). The doctrine only applies where it is clear that "the deterrence rationale of the exclusionary rule has so little basis that the evidence should be received." *United States v. Cotnam*, 88 F.3d 487, 496 (7th Cir. 1996)). It applies in the context of a warrantless search if a warrant would certainly, and not merely probably, have been issued had it been applied for. *United States v. Are*, 590 F.3d 49, 50 (7th Cir. 2009) (citing *United States v. Tejada*, 524 F.3d 809, 813 (7th Cir. 2008)).

Here, Officer Ealing's observation of the Defendant shooting a handgun, running into the house with the gun, and coming back out of the house seconds later without the gun, presented a "fair probability that contraband or evidence of a crime [would] be found" in the house. *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (probable cause standard). The police would be interested in locating this gun because the Defendant discharged it in a residential neighborhood.[1] The police also learned that the Defendant did not have a permit to carry the gun. The information regarding the Defendant's reckless use of the gun and his lack of a permit was obtained independently of

---

[1] Pursuant to Indiana Code § 35-42-2-2, a person commits criminal recklessness if he "recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person." Ind. Code § 35-42-2-2(b)(1). The offense is a Class D felony if it is committed while armed with a deadly weapon. *Id.* § 35-42-2-2(c)(2). The police could reasonably believe that the Defendant committed criminal recklessness when an officer observed the Defendant fire the gun in a residential area.

any Fourth Amendment violation. It is reasonable to conclude that, under these circumstances, the officers would have sought a warrant to search the house for the gun and that a warrant would have been issued. Armed with a search warrant, the officers inevitably would have discovered the gun underneath the couch by lawful means. Accordingly, the exclusionary rule sanction should not apply, and the gun is admissible. *See, e.g., Are*, 590 F.3d at 507 (finding that a firearm would inevitably have been discovered with a search warrant because the defendant admitted that a gun was under the dresser in the bedroom and his statement was not obtained illegally).

The Defendant does not dispute that Officer Ealing's observations provide an independent legal basis for searching the house and that these observations would have supported the issuance of a warrant had one been sought. The Defendant's argument against the application of the inevitable discovery doctrine is that, after placing the Defendant under arrest and conducting a sweep of the home, there is no certainty that they would have sought a warrant, particularly when they had already conducted a second search under the pretext of a valid consent from the Defendant's mother. (Def.'s Brief 5 (arguing that, in essence, the Government's position is that "the revolver would inevitably have been discovered in the [ ] Oliver home via a search warrant despite the fact that it was removed during a search conducted under an invalid Consent to Search").) The Defendant's argument bypasses the critical question for application of the doctrine, which is whether the police would have "conducted a lawful search *absent* the challenged conduct." *United States v. Marrocco*, 578 F.3d 627, 638 (7th Cir. 2009) (emphasis added) (citing *United States v. Brown*, 64 F.3d 1083, 1085 (7th Cir. 1995)). Under the doctrine, a court assumes that evidence has been illegally obtained and then determines whether officers

6

would have ultimately or inevitably discovered it by lawful means. Here, the challenged conduct is the search of the house on Oliver Street that resulted in the discovery of the gun. The proper inquiry then is whether the police would have sought a warrant if they had not searched underneath the couch. As already stated above, it is reasonable to conclude that, absent the search that led to the discovery of the gun, the police would have continued their efforts to locate the missing gun by obtaining a search warrant. Accordingly, the deterrence rationale behind the exclusionary rule does not apply, and the firearm need not be excluded.

**B.     Exigent Circumstances**

Although the inevitable discovery doctrine applies and permits the admission of the evidence, the Court will consider whether exigent circumstances existed as this would provide an independent basis for upholding the search.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, this provision is understood to require a search warrant to enter a person's home to look for evidence. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (stating that it is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable") (quotation marks omitted); *United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007). "Yet warrants are not the *only* way to justify entries as reasonable. Exigent circumstances are another." *United States v. Limares*, 269 F.3d 794, 799 (7th Cir. 2001) (italics in original); *see also Kentucky v. King*, No. 09-1271, 2011 WL 1832821 at *5, 536 U.S. — (May 16, 2011) (stating that one "well-recognized exception"

7

to the warrant requirement "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment") (quotation marks and brackets omitted); *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). Searches based upon exigent circumstances "are constitutionally permissible . . . where . . . probable cause and exigent circumstances create a compelling need for official action and insufficient time to secure a warrant." *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001); *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010). The Supreme Court has identified several exigencies that may justify a warrantless search of a home, including to allow police to render emergency assistance to an injured occupant or to protect an occupant from imminent injury, to pursue a fleeing suspect, and to prevent the imminent destruction of evidence. *King*, 2011 WL 1832821, at * 5. Exigent circumstances also exist where police reasonably believe that their safety, or the safety of the public, may be threatened. *Huddleston*, 593 F.3d at 600; *see also Minnesota v. Olson*, 495 U.S. 91, 100 (1990). The government bears the burden of establishing, based on the circumstances viewed from the perspective of the officers at the scene, that the officers had an objectively reasonable basis for believing that exigent circumstances justified their warrantless entry. *United States v. Venters*, 539 F.3d 801, 807 (7th Cir. 2008). The inquiry is not what the officers could have done, but whether their entry was justified based on what they knew at the time. *Huddleston*, 593 F.3d at 601.

The record shows that the officers at the scene had probable cause to believe that the Defendant had committed the offense of criminal recklessness when he fired a gun in a residential area. Based on the circumstances, they also had an objectively reasonable basis for believing that their safety, or the safety of the public, may be threatened. Officer Ealing

responded to a 911 emergency call regarding a man shooting a gun in a residential area. The Defendant matched the description. After Officer Ealing arrived, he witnessed the Defendant fire a handgun from his porch. The Defendant did not comply with Officer Ealing's commands to drop the gun even though Officer Ealing had a weapon pointed at him. Instead, the Defendant entered the house, returned without the gun, and further ignored police orders before he eventually complied. In addition, the Defendant was noticeably intoxicated. Although the Defendant's girlfriend was outside the house on the porch, the officers did not know whether anyone was inside the home who could gain access to the gun and threaten the police or the public, or who might have already been injured by the Defendant's reckless shooting. It was also reasonable for the police to believe that the Defendant had left the gun inside the house because he did not want the police to recover it and that another person inside the house could assist him in disposing of the gun. Upon entering the house, the police found both the Defendant's brother and his mother, but neither was injured or appeared to have the handgun. However, the gun, which was later determined to be loaded, was still missing. In *United States v. Webb*, 83 F.3d 913 (7th Cir. 1996), the Seventh Circuit found that exigent circumstances justified an officer's retrieval of a gun from the trunk of a car. The court explained:

> Officer Cline was justified in retrieving the gun from the trunk into which it had been thrown by the defendant. Officer Cline saw the defendant aim the weapon at another individual, "toss" the gun into the trunk, and slam the lid. Because the keys were still in the trunk's lock, it was reasonable for Officer Cline to believe that the gun posed a safety risk to the public. Left unattended, the gun easily could have been retrieved by anyone passing the car. Furthermore, Officer Cline testified that he feared that the firearm might go off accidentally because the safety mechanism might not have been activated. Because the gun was easily accessible and was in an unknown condition, Officer Cline was justified in opening the trunk to retrieve the weapon.

*Id.* at 917. Likewise, Officer Ealing had no way of knowing the condition of the gun, but could

reasonably assume that it was still loaded and was not rendered safe given the Defendant's reckless behavior and state of intoxication. The gun may have been less accessible inside a house than in the trunk of a car, but the difference is not sufficient to distinguish the outcome, particularly because other individuals would remain inside the house as the police left with the Defendant in their custody. The Defendant's relatives and Harris would be free to retrieve the weapon and could attempt to use it against the police as they left the scene if the gun was not recovered. *Cf. Are*, 590 F.3d at 506–07 (holding that the application of the public safety exception to *Miranda* to an FBI agent's post-arrest question whether there were any weapons inside the house was bolstered by the presence of the defendant's wife and children who could conceivably retrieve the gun and attempt to use it against agents as they took the defendant away). The gun still remained a safety threat until the police could take possession of the weapon. Thus, the police had an objectively reasonable basis for believing that immediate official action was required to locate the gun that the Defendant had hidden inside the house moments before they began their search for it.

The Defendant argues that there was no objectively reasonable basis upon which the officers can claim that exigent circumstances existed because Officer Ealing testified that, had Mary Bennett not given Officer Drummer consent to enter the house, he would have tried to obtain a search warrant to recover the firearm. The relevant inquiry, however, is whether the search was objectively reasonable based on what the police knew at the time—the subjective beliefs of the officers do not control. *Brigham City*, 547 U.S. at 404.

The Defendant also argues that the search should have been limited to a protective sweep to ensure the safety of the officers and persons on the scene. This argument could have merit if

the police had only been looking for people. *See United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993) (noting that the scope of a search based on exigent circumstances must be limited to the circumstances that justified it). As stated above, the police were warranted in believing, under the circumstances of this case, that the missing gun itself posed a safety risk. The Court finds that the scope of the search was appropriately limited to the circumstances that justified it.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress is DENIED. A trial is set to begin in this matter on Tuesday, July 12, 2011, at 8:30 AM before Judge Theresa L. Springmann. A telephonic Final Pretrial Conference is set for Wednesday, June 29, 2011, at 11:30 AM.

SO ORDERED on June 6, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT